### SMITH and others v. CRAFT and others.

*(Circuit Court, D. Indiana. September 14, 1883.)*

1. INSOLVENCY—OBTAINING CREDIT—PROMISE TO SECURE CREDITOR.
   The mere fact that a borrower, at the time of procuring a loan or credit, makes an oral statement or promise that if he should become insolvent he will secure or prefer the one who gives such credit over others, will not disqualify him from giving, and the creditor from receiving, the promised favor; and a transfer of property made in pursuance of such promise will not be set aside as fraudulent, at the instance of the other creditors, except when a fraud was intended, or the circumstances within the knowledge of the creditor preferred were such that he must have known that injury to others would probably result.

2. SAME—EMPLOYER OF INSOLVENT TO MANAGE PROPERTY.
   Nor will the fact that the insolvent, in the writing by which the agreement was effected, was employed to manage the property conveyed, in the absence of proof of fraud, be sufficient to avoid such transfer.

[1]From 8th Sawyer.

In Equity.

*Horace Speed,* for complainants.

*McDonald & Butler* and *Herod & Winter,* for respondents.

Woods, J. Craft, being insolvent, made a transfer of his goods in trust to Churchman in payment of his indebtedness to Fletcher & Churchman, his bankers. This is an action by other creditors of Craft to set the transfer aside, and to have Fletcher & Churchman declared trustees, and, as such, accountable for the value of the goods. There are two grounds upon which, in argument, it is claimed that the transfer was unlawful and invalid: *First,* because of the stipulation in the writing by which the agreement was effected for the employment of Craft by Churchman; and, *second,* because of the promise made by Craft to Fletcher & Churchman, when obtaining credit with them, "that he would protect the bank if anything ever occurred by which he was not able to pay his debts; that if he met with losses he would secure the bank, if the bank would loan him money from time to time."

As to the agreement for employment, it may be observed that it was for no definite time, and was liable to be terminated by either party at will. Besides, it does not appear at whose instance, nor for whose benefit, the stipulation was made. Fraud is not to be presumed, and for all that is shown, Craft may have passed by opportunities for employment on better terms, in order to aid Fletcher & Churchman to make the best of the stock of goods, which, it is shown, was inadequate to pay in full the debt upon which it was taken. The fact that Craft had failed in the management of the business as owner, is no evidence of the value of his services in the capacity in which he was employed. It cannot, therefore, be said that this stipulation was extorted for Craft's benefit, and as a condition upon which the preference of Fletcher & Churchman over other creditors was granted.

As to the promise to secure the bank, it is insisted that this was in the nature of a secret lien, and that the tendency of the transaction was to give Craft a delusive credit, and that as the parties must have all known this tendency, they must all be held to have intended, indeed, to have contrived a fraud upon all who should thereafter deal with Craft upon credit. The argument is plausible, but in my judgment not sound. In the first place, the promise to secure the bank had no force in law, and gave no additional sanction to the obligation of the debtor, beyond what was involved in the contracting of the debt; though there are some decisions under the bankrupt law which hold that a security given in fulfillment of a previous parol promise will make good a preference which otherwise would have been declared unlawful. Bump, Bankr. (9th Ed.) 806; *In re Wood,* 5 N. B. R. 421. Such, indeed, seems to be the established English rule. See statement of Lowell, J., *In re McKay,* 7 N. B. R. 230–233; S. C. 1 Low. 561. Other cases, however, are to the effect that such an

oral promise to give security is nugatory, and creates no obligation. Bump, *supra*, and cases cited. If of any binding or legal force between the parties, it is evident that the fulfillment of such a promise could not be deemed a fraud; but if of no force in law, then, except as it binds the individual conscience of the debtor, it cannot affect the exercise of his right to prefer one creditor over others; it can operate only as a motive by which the debtor may or may not in the end be controlled. But in respect to the right to prefer, it is settled law that the debtor's motive for his preference cannot be inquired into.

In *Grover* v. *Wakeman*, 11 Wend. 195, decided in 1833, and often cited, it was said:

" The right to prefer may originally have been sustained in part upon the supposition that just and proper grounds of preference did in most cases exist; and would be duly regarded by the debtor; but whatever may have been the reason or foundation of the rule, it is one of that numerous class of cases in which the rule has become absolute, without any regard to the fact whether the reason on which it was founded exists or not in the particular cases."

—And while in *Riggs* v. *Murray*, 2 Johns. Ch. 564, Chancellor KENT strongly condemns the inequalities and wrongs of preferences given sometimes "to the very creditor who is least entitled to it, because he lent to the debtor a delusive credit, and that, too, no doubt, under assurance, or a well-grounded confidence, of priority of payment, and perfect indemnity in case of 'failure,' " he adds, in the same connection: "I do not question the legality, however I may doubt the policy, of the rule which sanctions such partialities."

In no case or book cited has it been decided or said that merely because the borrower, at the time of procuring a loan or credit, had made an oral statement or promise that he would secure or prefer the one who gave such credit over others, he thereby disqualified himself from giving, and the creditor from receiving, the promised favor; and I am not able to agree that such is the law. If it be, then, instead of confining their prayer for relief to the goods in question, the plaintiffs might as well have asked that Fletcher & Churchman be held to account for all payments made to them upon their loans to Craft; for if the payment in goods was unlawful, payments in money were equally so, and, if necessary, should be brought under the same trust which it is sought to fasten upon the goods.

Carried to its logical consequences, the doctrine contended for made it impossible that Fletcher & Churchman, as against the plaintiffs or other creditors of Craft in the same situation, could have lawfully accepted payment from Craft upon the loans which they made him, so long as he was unable to pay the plaintiff and like creditors in full; and this would be so irrespective of the good faith of the parties, and notwithstanding the validity of the debt, its full consideration, and

every other feature of merit, except only the fatal promise to prefer, the taint of which, once it had attached, it would seem, could in no manner be escaped. If it be the law that an express promise to secure or prefer a loan cannot be performed, it must be that an implied promise, or tacit understanding, would have the same effect; and, whether or not there was such an understanding in each case, as it arises, must be a question to be determined usually upon circumstantial evidence. Upon such an inquiry, the personal and business connections, and even the social and domestic relations of the parties, might be deemed significant; and so the facts which afford the best motives for a proper preference might be converted into proof that the preference was given in consummation of an unlawful understanding or assurance given when the credit was obtained. Such a doctrine, if established, instead of constituting a healthful restriction upon the right of preference, would amount to a practical denial of the right in the cases wherein, if in any, it may be meritoriously exercised.

I do not doubt that a promise to secure or to prefer a creditor, made at the time the credit is given, may be fraudulent, but it must be when a fraud is intended, or when the circumstances within the knowledge of the creditor are such that he must know that injury to others will probably result. But when, as in this case, the debtor was doing an apparently prosperous business, though largely on credit, and advances were made to him without a belief, or any imperative reason for the belief, that he was, or was likely to become, insolvent, it cannot, in my judgment, be said that a promise to protect, if disaster should come, cannot be performed. It may be true that such a loan gives a delusive credit, and is in the nature of a secret lien; but the loan itself, without the promise of protection, unless published to the world, gives a delusive credit; and while, as already shown, there is no lien in fact, because such a promise, especially when made in the general terms employed in this instance, has no legal force, the law by no means condemns every transaction in the nature of a secret lien. In this state conditional sales are upheld, and every factor, commission merchant, or bailee of goods is clothed with the apparent ownership of property which is not his, and yet the secret rights of the real owner are protected.

A mortgage, if on real estate, may be kept off the record for 45 days, and a chattel mortgage for 10 days, without impairment of the lien, unless done with a fraudulent intent, though the mortgagee in every such instance must know that his failure to record may result in injury to others. As, in such cases of actual liens, the omission to record is not a fraud unless fraud was intended, much more is it no wrong to receive a mere promise of security, which may or may not be performed, and give no notice of it, if done without active concealment and without fraudulent intent. This is the doctrine of *Blennerhassett* v. *Sherman*, 105 U. S. 100, as I understand the decis-

ion in that case, in so far as it is applicable to the present discussion. In the case of *Hilliard* v. *Cagle*, 46 Miss. 309, which is urged upon my attention, there was such concealment of the trust deed as to justify the conclusion reached in the case; but, as it seems to me, neither the decision rendered nor the discussion upon which it is based is applicable with much, if any, force here. But while I have thus indicated my views upon the two propositions stated, I do not find it necessary to have decided upon either of them, because they are not embraced in the averments of the bill.

The substance of the charge of fraud contained in the bill is in the averment to the effect that, knowing Craft's insolvency, the defendants (including F. & C.) did not make it known, but concealed it from the plaintiffs and others, who became creditors of Craft; that they made a pretended sale of the stock of goods in payment of a pretended debt; that Craft continued in possession of the goods and made sales thereof, applying a part of the proceeds to his own use, and a part to the use of Fletcher & Churchman, with their consent and at their request; that the defendants, and each of them, knew that Craft's purchases of the plaintiffs and others were being made upon a credit, and upon misrepresentations by Craft as to his financial condition; that said pretended sale was without consideration, and was effected by the defendants with the intent to hinder, delay, and defraud the plaintiffs and other creditors of Craft; and that if Craft was indebted to Fletcher & Churchman it was kept secret and concealed by them with the intent that Craft should have and retain credit with the plaintiffs and other dealers. These averments, as made, are not proven; or, to say the least, the evidence is not such as to warrant the court in setting aside the conclusion of the master that they are not proven, and they are not comprehensive enough to embrace the grounds upon which counsel for the plaintiffs predicates and presses their right of recovery. The bill contains no suggestion that the writing by which the transfer of the stock was evidenced was void on account of any stipulation contained in it; nor is it indicated by any averment, or by the entire bill, that the sale was void because of the promise made to Churchman, when credit was extended, that, in the event of disaster, the bank should be protected.

My conclusion is that the exceptions to the master's report should be overruled and the bill dismissed.