## SMITH *v.* CRAFT.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

Argued November 4, 1887. — Decided December 5, 1887.

Whether an agreement to prefer a *bona fide* creditor is so fraudulent against other creditors, as to avoid a subsequent preference of the former, involves a question of fact, depending upon all the circumstances, and cannot be referred to this court by certificate of division of opinion.

A bill of sale of a stock of goods in a shop, by way of preference of a *bona fide* creditor, is not rendered conclusively fraudulent, as matter of law, against other creditors, by containing a stipulation that the purchaser shall employ the debtor at a reasonable salary to wind up the business.

*Jewell* v. *Knight, ante*, 426, followed.

BILL IN EQUITY by general creditors of Craft against him, Fletcher and Churchman. After a hearing upon pleadings and proofs before the Circuit Judge and the District Judge, the bill was dismissed, and they signed a certificate of division of opinion, the formal parts of which were like those of the certificate in *Jewell* v. *Knight, ante*, 426, and the rest of which was as follows:

"On April 5, 1879, William H. Craft, one of the defendants, was indebted to Fletcher and Churchman, under the firm name of S. A. Fletcher & Co., known as Fletcher's Bank, in about the sum of $33,000. He was also indebted to William Smith and others, the complainants, and other eastern creditors, in about the sum of $16,000. Craft had been for many years a dealer in watches and jewelry in the city of Indianapolis, and had enjoyed good credit, both at Indianapolis and in the eastern cities, among manufacturers and wholesale dealers. By an

invoice taken about the date above named, it became known to him that his entire assets amounted to about $33,000. The indebtedness to the bank of S. A. Fletcher & Co. was evidenced by two promissory notes of $12,500 each, dated December 27, 1878, and due in thirty and sixty days respectively, and one note of $7313.19, dated August 17, 1877, which, with accrued interest, amounted to $8085.35, payable to F. M. Churchman. The notes for $12,500 each were for money borrowed of the bank as follows, to wit: in November, 1876, $7000; in February, 1877, $6000; in August, 1877, $2500; in October, 1877, $6500; and other sums, making the total amount due in December, 1878, $25,000. The loans were made upon 90 days' time, and ten per cent annual interest deducted in advance at the time of the loan and of each renewal, the renewals having been regularly and promptly made every 90 days until December 28, 1878, at which time some of the notes were overdue. No further renewals were made. The note for $7313.19 was executed August 17, 1877, the money having been used by Craft in making the last payment on a stock of jewelry purchased by Craft at the date of the execution of said note.

"The debts owed by Craft to his eastern creditors were for stock purchased from time to time for the purpose of replenishing his store, and his eastern debts were about fifty thousand dollars in 1876, when he began to borrow money from the Fletcher Bank.

"At the time the notes for $12,500 each were given, it was understood between Craft and the bank that Craft should not buy so heavily as he had been doing theretofore, and carry a less stock and apply his sales (as far as practicable) in reducing the debt to the bank. At that time Craft represented his stock as being worth $60,000.

"On the said 5th day of April, after completing his inventory and finding from it his inability to pay all his debts, he went to the office of Ritter & Ritter, attorneys, they being his legal advisers, to counsel with them in regard to his affairs, and thence sent for F. M. Churchman, the business manager of Fletcher's Bank, and made known to Churchman his finan-

cial condition, intimating at the same time an intention to make an assignment for the benefit of his creditors. This was the first information that Churchman or the bank had of the insolvency of Craft.

"Churchman reminded Craft of the many conversations they had had together, and that Craft had always said he would protect the bank if anything ever occurred by which he was not able to pay his debts; if he met with any losses or anything of the kind, he would secure the bank, if the bank would loan him the money from time to time. Craft said he had made these promises, and believed he was solvent all the time and able to pay the bank, and intended to pay it and wanted to secure the bank debt. Churchman then told him he did not know of but one way to do it, and that was for the bank to buy the stock. This Craft finally agreed to, and the following bill of sale was drawn up and signed by Craft:

"'Whereas William H. Craft, of the city of Indianapolis, Marion County, State of Indiana, is indebted to Francis M. Churchman, of said city, in about the sum of thirty-one thousand dollars, evidenced by three certain promissory notes, dated respectively each December 27, 1878, two for the sum of $12,500 each and the other for the sum of $7363, due respectively in thirty and two in sixty days after date, and signed by W. H. Craft, now, in consideration of the full payment, satisfaction and surrender of said indebtedness and notes, said Craft does hereby bargain, sell and deliver to said Churchman all his stock of watches, diamonds, jewelry, silverware, fixtures and property of every kind, now owned and used by said Craft in his business at No. 24 East Washington Street in said city; also all the interest of said Craft in the lease held by him to said premises; and the further consideration that said Churchman shall employ said Craft in said business at the rate of one hundred and fifty dollars per month so long as said Churchman shall carry on or continue said business. In witness whereof I have hereunto set my hand and seal this fifth day of April, 1879.

"'WILLIAM H. CRAFT.'"

"The complainants are merchants and manufacturers in Eastern cities, who had for many years dealt with the defendant Craft, selling him goods on credit, and knew nothing of his indebtedness to the bank or of his promise to protect the bank in the manner above found by the court, and continued to sell him goods on credit while he was so borrowing money."

The certificate then stated in detail the names of the plaintiffs, the amounts of their debts (each being for less than $3000) for goods sold at various times before March 26, 1879, and the judgments recovered thereon by them in the Superior Court of Marion County, at different dates from September 18, 1879, to June 9, 1881 ; that executions were issued upon those judgments, and returned *nulla bona ;* and that all of those judgments are in full force, unpaid and unsatisfied ; and continued as follows :

"Upon the execution and delivery of the said bill of sale, which was for the use and benefit of the bank, the three notes above mentioned held by the bank were delivered up to the said Craft as paid and satisfied, and Churchman, for the bank, took possession of the property, stock of jewelry and lease mentioned in the bill of sale, and, with Craft as manager, carried on the said business, reducing the stock as rapidly as possible, with a view to closing it out, for about six months, when the balance of the stock was sold out at auction. The bank realized for the entire stock $20,000. Craft received, during the time he was so employed as manager, the sum of $150 per month, as stipulated in the said bill of sale, and had no interest, either directly or indirectly, except as appears by said bill of sale, in the stock of jewelry or the lease or in the proceeds of either after the date of said sale."

The certificate then stated that upon the hearing of the said cause the following questions arose, upon each and all of which the opinions of said judges were opposed, to wit :

"First. Whether the understanding between the said Churchman, representing the said bank, and the said Craft, that if the said bank would loan the said Craft money from time to time, and that if anything should occur by which he, the said Craft, was not able to pay his debts, he would secure

the bank, constituted a fraud upon the said Smith & Co. and other creditors named in the said bill of complaint, so as to invalidate and render void the said sale of the said stock of jewelry and the assignment of the lease so afterwards made to the said Churchman for the use of the said bank.

"Second. Whether the 'further consideration,' mentioned in said bill of sale, by which the said Craft was employed in said business for a compensation at the rate of $150 per month so long as the said Churchman for the said bank should continue or carry on said business, was fraudulent as to the said Smith & Co. and the other creditors of the said Craft, and whether said stipulation vitiated and rendered void said sale made to the said Churchman for the said bank, as to the said other creditors of the said Craft.

"Third. Whether, as a conclusion of law from the above facts which are found by the court, the said sale by the said Craft to the said Churchman for the use of the said bank was and is fraudulent and void, and made to Churchman for the bank with the intent to hinder or delay the said Smith & Co. and the other complaining creditors of the said Craft."

*Mr. Benjamin Harrison* and *Mr. Horace Speed* for appellants.

*Mr. Joseph E. McDonald* for appellees. *Mr. John M. Butler* was with him on the brief.

Mr. JUSTICE GRAY delivered the opinion of the court.

This case, also, comes before the court upon a certificate of division of opinion, and resembles in many respects that of *Jewell* v. *Knight, ante,* 426, argued with it, and just decided.

It is a bill in equity by several creditors, each of whose claims is for less than $5000, to set aside as fraudulent a sale made by their debtor, Craft, a dealer in watches and jewelry, of his whole stock in trade to Fletcher and Churchman, a banking partnership, known as Fletcher's Bank.

The first question certified is, whether the understanding

between the bank and Craft, that if the bank would lend him money from time to time, and that if anything should occur by which he was not able to pay his debts, he would secure the bank, constituted a fraud upon his other creditors, so as to invalidate the subsequent sale of his stock.

What the understanding here referred to was, or how long it had existed, can only be gathered from the statement of a different understanding at the time of the giving of the latest notes by Craft to the bank; from the recital of a conversation between Craft and Churchman on the very day when the bank was first informed of Craft's insolvency and when the bill of sale was executed; and from the other circumstances set forth in the certificate of division.

As the debtor might lawfully prefer one of his creditors if there was no actual fraud, it cannot, in the absence of any finding upon that point, be said, as matter of law, either that the previous agreement to prefer was fraudulent, or that it was not; but the question of fraud or no fraud involved a question of fact, which, if this case had been on the common law side of the court, and either party had desired it, must have been submitted to a jury. *Bank of Leavenworth* v. *Hunt*, 11 Wall. 391; *National Park Bank* v. *Whitmore*, 104 N. Y. 297.

The second question certified is, whether the bill of sale was rendered void as to other creditors by containing a stipulation that the bank should " employ said Craft in said business at the rate of $150 per month so long as " the bank should " carry on or continue said business."

But whether such a stipulation is valid or invalid depends upon its intention. If its object appeared on its face to have been to secure a benefit to the debtor or his family, it would be fraudulent in law. *Lukins* v. *Aird*, 6 Wall. 78; *McClurg* v. *Lecky*, 3 Penrose & Watts, 83; *Harris* v. *Sumner*, 2 Pick. 129. But if its sole purpose was to obtain services necessary to wind up the business and turn the goods into money as promptly and economically as possible, for the benefit of the other party, it is valid. *Wilcoxon* v. *Annesley*, 23 Indiana, 285; *Baxter* v. *Wheeler*, 9 Pick. 21; *Strong* v. *Carrier*, 17

Conn. 319. As was well said by the Supreme Court of Indiana in *Wilcoxon* v. *Annesley*, "Where, as in this case, the purchase was of a stock of goods in a store, and an established trade existing, it seems but reasonable that, at a fair salary, the grantor might be employed, for a time at least, to continue in charge of the business, and that circumstance will not in itself prove the transaction fraudulent." 23 Indiana, 295.

The only facts stated in the certificate, (other than the bill of sale itself,) directly bearing upon the validity of the stipulation, are that the bank, with Craft as manager, carried on the business, reducing the stock as rapidly as possible, "with a view to closing it out," for about six months, when the stock remaining was sold by auction; that the bank realized for the entire stock $20,000; and Craft received the sum of $150 a month, or about $900 in all, and, since the bill of sale, had no other interest, direct or indirect, in the stock of goods or its proceeds. It cannot be concluded as matter of law, either on the face of the bill of sale, or with the aid of this evidence of what was done under its provisions, that the compensation was unreasonable, or that the stipulation in question was fraudulent. Whether, taken in connection with all the previous transactions between the parties, it was fraudulent in fact, was a question to be decided by the Circuit Court.

The third question certified is clearly irregular, as avowedly referring the whole case to the decision of this court.

For these reasons, and upon the authorities collected in *Jewell* v. *Knight*, *ante*, 432, 433, this court has no authority to answer any of the questions certified, and the entry must be

*Appeal dismissed.*