FOSTER ET AL, VS. McALESTER, ET AL.

Opinion delivered October 5, 1900.

1. *Chattel Mortgages—Preferences—Fraudulent Conveyance—Evidence.*

When a mortgagee seeks to recover the value of a stock of goods, taken from the mortgagor by attachment suits at the instance of other creditors of the mortgagor, where the attaching creditors claim a fraudulent conspiracy between the parties to the mortgage to assist in procuring goods on credit from others, it becomes necessary for the defendants to show a fraudulent intent on the part of the mortgagor and knowledge of or participation in such intent on the part of the mortgagee and for that purpose, the declarations and acts of the debtor made before the transfer and contemporaneous with it, are a part of the res gestae and admissible; and under this principle it is competent to show false statements made by the debtor to procure credit and statements made and letters written by the mortgagee indicating knowledge on his part of the fraudulent conduct of the debtor.

2. *Fraudulent Conveyances—Creditors May Attack.*

The rule that a mortgage taken without fraudulent intent is not open to attack as against the mortgagee as fraudulent does not prevent the creditors from contesting the validity of a mortgage, and the right of the mortgagee to the mortgaged property, on the ground of fraud, when it is claimed that the mortgage was given and taken with fraudulent intent, and the mortgagees were participants in and parties to such fraud.

3. *Chattel Mortgage—Concealed from Public—False Representations of Mortgagee—Fraudulent.*

Where the pleadings in an action between a mortgagee seeking to recover for the mortgaged property which was seized by attaching creditors of the mortgagor, fully and fairly present the question of a fraudulent combination and conspiracy between the parties to the mortgage, with fraudulent intent to defraud other creditors of the mortgagor, the evidence tended to establish the following facts: One of the mortgagors in business in Arkansas was indebted to appellants, became

insolvent and made a general assignment for benefit of his creditors; appellant advanced money sufficient to enable debtor to make a compromise with his creditors and took a mortgage covering his entire stock. Subsequently plaintiff permitted the debtor to remove the stock to Indian Territory and transfer same to a new firm of which he became a member, under an agreement with the new firm that plaintiff should have a mortgage from them for the amount of his indebtedness when demanded, and that the indebtedness should be kept concealed. Plaintiff did not for a time demand a new mortgage, and the mortgage given in Arkansas remained unsatisfied of record there, and was not also recorded in the Indian Territory. The new firm had no other capital than the mortgaged goods and was, in fact, insolvent. It made statements of its financial condition to creditors, concealing this indebtedness to plaintiff and plaintiff answering an inquiry from one of the attaching creditors stated that he was selling the firm goods and thought them good for what they wanted, and failed to disclose the indebtedness then existing to him. On the strength of the false financial statements and the representation of plaintiff the attaching creditors sold the goods for which they afterward sued and in which suits the attachments were had. Before these suits, however, plaintiff demanded and received a mortgage from the debtor firm covering the entire stock of the firm and took possession thereunder. And it is this mortgage which is thus directly attacked as fraudulent. *Held*, that such facts warranted a verdict finding the mortgage fraudulent as to the mortgagor's creditors, and that the plaintiff had participated in the fraudulent purpose and intent and fraudulent transaction, and was entitled to no rights whatever under such instrument.

Appeal from the United States court for the Northern District.

WILLIAM M. SPRINGER, Judge.

Action by J. Foster & Co., against J. J. McAlester, and others. Judgment for defendants. Plaintiffs appeal. Affirmed.

The plaintiffs below, appellants here, brought this action against the defendants below, appellees here, on April 5, 1895, to recover $4,000.00 as damages, alleging that plaintiffs were the owners and in possession of a stock of goods at Wagoner, Ind. Ter., and that on March 14, 1895, the defendants wrongfully, unlawfully, forcibly and without any right whatever, entered plaintiff's storehouse and seized, carried away and converted to their own use said goods to the value of $3,305.13, and ask judgment. This suit was brought against J. J. McAlester, David Adams and W. A. Lubbes, but plaintiff dismissed as to Adams and Lubbes on the trial. On November, 18, 1897 defendants filed their amended answer, and deny that plaintiffs were the owners and in possession of said goods on March 14, 1895 and deny that they wrongfully, unlawfully, forcibly and without right seized, carried away and converted said goods, as alleged. Defendants, for further defense, allege that plaintiffs base their right to recover on a mortgage given by E. Terrell & Co., to plaintiffs on January 28, 1895, on said stock of goods, to secure $3,971.56. Defendants say said mortgage was void under the assignment laws of this Territory "for the reason that thereby the said firm of E. Terrell & Co., conveyed all their property to said J. Foster & Co., in trust, for the purpose of raising a fund to pay certain preferred creditors, and not in good faith, as security for the payment of their debts." Defendants further allege the defendant McAlester was United States marshall for the Northern district, Ind. Ter., and that defendants Adams and Lubbes were his deputies; that writs of attachment were placed in his hands as marshal in case of Tootle, Wheeler & Motter against E. Terrell & Co., and the Tennant-Stribling Shoe Company against E. Terrell & Co. Defendants further say that the said mortgage was fraudulent and void, for the reason that a combination or conspiracy had been entered into between E. Terrell & Co., and plain-

tiffs to induce merchants to sell to Terrell & Co., goods on credit, for the purpose of benefiting plaintiffs; that in 1893, John G. Terrell, one of the firm of E. Terrell & Co., was a merchant in Waldron, Scott County, and in Mansfield, Sebastian County, Ark.; that on February 11, 1893, said John G. Terrell gave a chattel mortgage to Josiah Foster, one of plaintiffs, on both said stocks of goods, and said mortgage was recorded in Scott County, Ark., to secure the payment of $4,300.; that on July 5, 1893, the said Josiah Foster entered into a fraudulent scheme and conspiracy with John G. Terrell to defraud the creditors of E. Terrell & Co. and more particularly the attachment creditors, and as a part of said conspiracy permitted said John G. Terrell to remove said stocks of goods from Arkansas to Wagoner, Ind. Ter., while said mortgage was in force "and, at the time permission was granted, it was understood and agreed, by and between John G. Terrell and Josiah Foster, one of the plaintiffs, that, upon the removal of the said stocks of goods from Arkansas to the town of Wagoner, a new firm was to be formed consisting of John G. Terrell, Elmer Terrell and J. C. Terrell, who were to succeed John G. Terrell, and take charge of said business after the removal of the said stocks of goods to Wagoner, and who were to assume the indebtedness alleged to have been due at that time from said John G. Terrell to said Josiah Foster, as shown by said chattel mortgage above referred to and a copy of which is hereto attached marked "Exhibit A"; it was further agreed, to-wit, about July 5, 1893 by and between said John G. Terrell and Josiah Foster, [of the firm of J. Foster & Co., plaintiffs, that after the said stocks of goods were removed from Arkansas to Wagoner, that the firm of E. Terrell & Co,, was to give Josiah Foster, or Josiah Foster & Co., plaintiffs herein, a chattel mortgage on said goods whenever same should be demanded by the plaintiffs or said Josiah Foster. It was further agreed by and between said Josiah Foster,

acting for the plaintiffs, and John G. Terrell, on or about July 5, 1893, that said Josiah Foster would not record the chattel mortgage he had on said stocks of goods while the same were in Arkansas, nor demand the mortgage agreed upon, until such time as he deemed it necessary to fully protect the indebtedness from E. Terrell & Co. to him. For the further reason, and as a part of the fraudulent scheme and conspiracy between said Josiah Foster, acting on behalf of the plaintiffs herein, and said John G. Terrell, acting on behalf of himself and E. Terrell & Co., it was agreed that the indebtedness from said John G. Terrell or E. Terrell & Co. to said Josiah Foster should be kept concealed, and was kept concealed, from Tootle, Wheeler & Motter, the Tennant-Stribling Shoe Company, and other creditors of E. Terrell & Co., for the purpose of enabling E. Terrell & Co. to purchase and procure goods on credit from said firms, in order that said plaintiffs might secure the benefit of said purchase by demanding and receiving from E. Terrell & Co. the mortgage hereinbefore described. And in further carrying out said fraudulent scheme and conspiracy entered into between John G. Terrell, on behalf of E. Terrell & Co., and Josiah Foster, on behalf of the plaintiffs herein, the said E. Terrell & Co. caused to be made out, signed, and mailed over their said signature a false and fraudulent statement as to their financial condition, to Tootle, Wheeler & Motter, and also a false and fraudulent statement as to their financial condition to the firm of the Tennant-Stribling Shoe Company, for the purpose of procuring merchandise from said firms upon a credit; and, as a further carrying out of said fraudulent scheme and conspiracy by and between said John G. Terrell, on behalf of himself and the firm of E. Terrell & Co., and Josiah Foster, acting on behalf of the plaintiffs, the said J. Foster & Co. made to the firm of Tootle, Wheeler & Motter, one of the attaching creditors hereinbefore referred to, a false and fraudulent statement of their financial condition, promptness, and abil-

ity to meet their obligations to E. Terrell & Co." Defendants further allege, in an amendment to their answer, that E. Terrell & Co., in pursuance of said conspiracy, obtained from the attaching creditors and other mercantile firms large amounts of merchandise, most of which was covered by said mortgage of January 28, 1895, by reason whereof said mortgage is in law fraudulent and void. The case was tried before a jury, who returned a verdict for defendant. Plaintiffs moved for a new trial, which was overruled by the court; whereupon plaintiffs appealed to this court.

*Chas. E. Warner (Maxey & Martin, of counsel)*, for appellants.

*Stuart, Lewis & Gordon* and *H. O. Shepard*, for appellees.

TOWNSEND, J. The appellants (plaintiffs below) have filed 24 specifications of error, but, in discussing them in their brief, they say: "We shall endeavor to group them, and thus abbreviate the labor involved in reviewing the entire ground."

Preferences.

They first discuss and cite authorities to support the proposition that a debtor may make a preference among his creditors. There can be no dispute of this proposition, if the same is done honestly and in good faith.

They next object to the court below having admitted evidence of the financial statements sent out by the debtor to the attaching creditors, and also object to the letter of appellants to one of the attaching creditors; but where a fraudulent scheme and conspiracy is charged, and a fraudulent intent is sought to be established between appellants and the debtors, we think the evidence was properly admissible. See Bump, Fraud. Conv. "In questions of fraud or bona

Evidence.

fides, an adequate judgment can, in general, only be formed by having a perfect view of the whole transaction, and this includes the conversation which forms a part of it. The language which is used on any occasion forms a part of the res gestæ. The declarations and acts of the debtor, made before the transfer and contemporaneous with it, are admissible. They are admissible in evidence in favor of the grantee as well as of the creditors. The acts and declarations of the grantee which accompany the transfer stand on the same footing as those of the debtor. So far as the acts and declarations of the parties form a part of and assist in giving character to the transaction, they constitute a part of the res gestæ and are competent evidence. When admitted, they do not conclusively establish the fraud, but are to be considered in connection with other evidence, and to be governed as to their effect by the usual rules of law. The declarations of an agent, when they constitute a part of the res gestæ, are also competent evidence. In order to invalidate a transfer for a valuable consideration, it must be shown that it was made with a fraudulent intent on the part of the debtor, and that the grantee had notice of this intent and participated in it. These propositions are, in some measure, independent of each other, inasmuch as there may be a fraudulent intent on the part of the debtor which may not be known to the grantee, though proof of both must concur to establish the right of a creditor to recover. The evidence to prove these several propositions may be of different kinds and drawn from different sources. It may apply separately to the two branches of the case. Evidence in regard to the conduct and declarations of the debtor prior to the transfer is admissible to prove the fraud on his part, and, if this is proved, the knowledge of it on the part of the grantee may be proved by any circumstances tending to show a participation in the designs of the debtor. These acts and declarations may be proved without proving knowledge on the part of the

grantee of the particular acts and declarations from which the fraudulent intent is to be inferred.   The competency of such evidence does not depend upon the time when the act was done or the declaration was made.   If the act or declaration is so connected with the main fact under consideration as to explain its character, further its object, or to form, in conjunction with it, one continuous transaction, the evidence is admissible, without regard to the time when the act was done or the declaration was made.   But, if the act or declaration was so long prior to the transaction in controversy that it does not tend to throw any light on it, the evidence is not admissible.''   Bump, Fraud, Conv. (3d Ed.) pp. 580–582; Smith vs Soc., 123 N. Y. 85, 25 N. W. 197, 9 L. R. A. 616.

The next propositions asserted by appellants are that, ''having elected to sue for the price of the goods and affirm the contract sale by prosecuting their claims to judgments, these creditors could not have shown fraud in procuring the credit, so as to defeat the title of one who was not a party to the fraud.   *   *   *   A mortgage taken without fraudulent intent, to secure no more than the actual debt of the mortgagor, is not open to any attack as fraudulent.   *   *   *   That a mortgagee is not affected by the fraudulent acts of the mortgagor, to which he is not a party, is the well-established doctrine,''—and citing authorities to sustain each of the propositions.   But it is alleged that appellants were parties to the fraud, and that the mortgage taken was with fraudulent intent, and that appellants, as mortgagees, were parties to the fraud of the mortgagor.   Hence the authorities are not applicable to the case at bar.

*Fraudulent Conveyances. Creditor's Attack.*

The appellants further object to the modification by the court of the ninth instruction requested by appellants, and the refusal of the court to give instructions Nos. 10, 11 and 12, requested by them, and the giving by the court of the seven instructions requested by appellees (defendants below), and the giving by the court of an instruction on the

court's own motion to the jury, after the jury had been for some time considering of their verdict. The various propositions argued and insisted upon by the appellants in their brief are for the most part correct, and the authorities cited in support of them good law. But the appellants have failed to grasp the issues as presented by the pleadings and supported by the proof and submitted by the court to the jury for their determination. The answer of the appellees presented fully and fairly the question of a fraudulent combination and conspiracy between the appellants, the mortgagees, and E. Terrell & Co., the mortgagors, and with fraudulent intent to defraud the other creditors of E. Terrell & Co., and especially the attaching creditors, under whose attachment writs the appellee the United States marshal acted. The issues presented by the pleadings are substantially set forth in the statement of facts supra, and need not be repeated here. The court below held that the mortgage executed January 25, 1895, by E. Terrell & Co. to appellants was not an assignment for the benefit of creditors, and therefore not void under the assignment laws; which ruling of the court is approved by the appellants. On the trial of the cause, as shown by the transcript of the record, the appellants "introduced testimony tending to prove that, in the year 1893, John G. Terrell, who then resided at Waldron, Ark., and was in business there, had made a deed of assignment for the benefit of creditors, in February, 1893, at which time he owed plaintiffs (appellants) $2,900 for merchandise. In order that John G. Terrell might compromise with other creditors, plaintiffs (appellants) loaned him an additional $1,400, taking three notes, payable to Josiah Foster, one of the plaintiffs (appellants) and said indebtedness was secured by a mortgage on two stocks of merchandise, one being situated at Waldron and the other at Mansfield, Ark., being the same property included in the deed of assignment." Thus it appears that Terrell was indebted to appellants in the sum of

$4,300, and the same was secured by a chattel mortgage on two stocks of goods "being the same property included in the deed of assignment" which chattel mortgage was recorded in Scott county, Ark. None of this indebtedness had been paid when on July 5, 1893, Terrell, as shown by the record, represented to the appellants that, by reason of "three successive crop failures," it was useless for him to continue business at Waldron and hope to pay his debts. Then it was that appellants consented to the removal by Terrell of the goods to Wagoner, Ind. Ter., the formation of a new firm, the agreement of the new firm to assume the indebtedness above mentioned to appellants, and the agreement of the new firm to give a new mortgage to appellants whenever appellants should see fit to demand same. The mortgage of January 25, 1895, was given upon demand of appellants by the new firm, E. Terrell & Co., to appellants, pursuant to said agreement. It further appears that the only capital the new firm had when they commenced business at Wagoner, Ind. T., was the stocks of merchandise brought from Arkansas aforesaid. It further appears that E. Terrell & Co. had paid to appellants prior to January 25, 1895, about $2,000 on said Arkansas indebtedness, and was indebted to them $1,175.41 for merchandise sold them by appellants since their removal to Wagoner, and that the balance on the Arkansas indebtedness, together with the said merchandise account, amounted to the sum of $3,971.56, which the mortgage of January 25, 1895, was given to secure, and that at the date of the service of the attachments by appellees there was stilll due appellants $2,488.75 on the note secured by said mortgage. The appellees gave in evidence two financial statements, one made by E. Terrell & Co. to the Tennant-Stribling Shoe Company, one of the attachment creditors, for the purpose of obtaining credit, dated July 19, 1893, showing assets to the amount of $16,500, and a net surplus over liabilities of $11,250. This was only a few days after com-

mencing business at Wagoner. The other to Tootle, Wheeler & Motter, attaching creditors, for the purpose of obtaining credit, dated January 30, 1894, showing assets to the amount of $16,025, and total liabilities of $3,666. Neither of said statements embrace the indebtedness to appellants contracted in Arkansas, nor mention the mortgage recorded in Arkansas on their stocks of goods, nor the fact that upon demand they were to give appellants a chattel mortgage upon their stock for any balance that might be due appellants. It was also shown that the mortgage in Arkansas was unsatisfied upon the record. Defendants also introduced in evidence the following correspondence between appellants and Tootle, Wheeler & Motter, attaching creditors: "St. Joseph, Mo., Feb. 1, 1894. J. Foster & Co., Fort Smith, Ark.—Dear Sir: Will you kindly give us, in confidence, such information as you may have regarding the credit, promptness, and financial standing of E. Terrell & Co., Wagoner, Indian Territory. Please answer upon this sheet, and oblige, yours truly, Tootle, Wheeler & Motter, Successors to Tootle, Hosea & Co." "Gentlemen: We are selling Messrs. E. Terrell & Co., and find them reasonably prompt. Think they are good for what they want. Truly, J, Foster & Co." Appellees also proved by Tootle, Wheeler & Motter that, had they known that appellants had a mortgage on the stock of goods, Terrell & Co. could not have secured credit from them, and that in giving credit to Terrell & Co. they greatly relied upon the letter of appellants to them. Appellees introduced in evidence the mortgage recorded in Scott county, Ark., and certificate of the clerk and recorder that the same had never been satisfied of record; also the affidavits of attachment and judgments sustaining the same. In rebuttal appellants gave evidence tending to show about the 1st of Febrvary, 1894, Terrell & Co. were solvent. This closed the evidence.

From the testimony it appears that appellants had a

mortgage on the goods of Terrell & Co. when removed to the
territory, unsatisfied, and that same was not recorded in the
territory; that the removal was with the consent of appel-
lants, and with a secret agreement that Terrell & Co. should

<span style="float:left">Concealment<br>of mortgage.<br>False repres-<br>entations of<br>mortgagee.</span>

give a new mortgage on demand of appellants. It also ap-
pears that, in the financial statements sent out by Terrell
& Co. to the attaching creditors, no mention is made of the
indebtedness to appellants, neither that a mortgage existed
on their stock to appellants unsatisfied, or of the secret
agreement to execute a new mortgage to appellants to se-
cure said indebtedness on demand of appellants. When ap-
pellants were applied to by one of the attaching creditors
for information of the financial condition of Terrell & Co.
the fact that appellants had an unsatisfied mortgage on the
stock was not disclosed, nor that they had an agreement for
a new mortgage to be given them on demand. Can appel-
lants recover under this state of facts? The court instructed
the jury, if they found the facts above enumerated, from
the testimony, to exist, their verdict should be for the ap-
pellees, and the jury returned a verdict for appellees. It is
evident from the testimony that Terrell & Co. at the time
of their removal to the Indian Territory, within the mean-
ing of the law, were insolvent. ''Insolvency means the
condition of a person unable to pay his debts as they fall
due or in the usual course of trade and business.'' 2 Kent,
Comm. p. 389. ''Insolvency, as used in the bankrupt act,
when applied to a trader, means a present inability to pay
in the ordinary course of his business, even though his in-
ability be not so great as to compel him to stop business.''
Wager vs Hall, 16 Wall, 584, 21 L. Ed. 504, syllabus.

When appellants consented that John G. Terrell, an
insolvent, should remove the goods to the territory for the
purpose of going into business under the new firm name of
E. Terrell & Co., by not putting their mortgage on record in
the territory, they concealed the same, and enabled Terrell

& Co. to contract debts upon the presumption that the goods were unincumbered. This put it in the power of Terrell & Co. to mislead and deceive those from whom they might purchase goods. This opportunity was quickly taken advantage of by Terrell & Co., as the testimony in the case shows. This was a fraud upon other creditors, but when, added to this, the appellants, when applied to in confidence by one of the attaching creditors for the financial standing of Terrell & Co., failed to disclose that they had a mortgage that was unsatisfied on the stock, and an agreement to have a new mortgage on demand to secure an indebtedness contracted before Terrell & Co. commenced business, this was such a concealment as proves an express fraudulent intent. If they spoke at all, they should have told the truth.

In Steele vs Coon (Neb.) 43 N. W. 414, 20 Am. St. Rep. 712, it is said: "The first conveyance cannot be upheld, for the reason that the deed was in law concealed, and not pursued; it not being placed upon record in the due and ordinary course of business in like transactions, nor until after the incurring of the obligations by the grantor which are now sought to be enforced against said farm—indeed, never was recorded. 'A deed not fraudulent at first may become so afterwards by being concealed or not pursued, by which means creditors have been drawn in to lend their money.' Hildreth vs Sands, 2 Johns. Ch. 35. 'A deed concealed from the public, the grantor remaining in possession and acquiring credit on the strength of his supposed ownership of the property, is fraudulent.' Barker vs Barker's Assignee, 2 Woods, 87, Fed. Cas. No. 986. In addition to cases cited in the brief of counsel for appellants, see, also, Sexton vs Wheaton, 8 Wheat. 229, 5 L. Ed. 603; Worseley vs Demattos, 1 Burrows, 467; Leukemer vs Freeman, Freem. Ch. 236."

In Blennerhassett vs Sherman, 105 U. S. 117, 26 L. Ed. 1086, it is said: "But where a mortgagee, knowing that his

mortgagor is insolvent, for the purpose of giving him a fictitious credit, actively conceals the mortgage, which covers the mortgagor's entire estate, and withholds it from the record, and while so concealing it represents the mortgagor as having a large estate and unlimited credit, and by these means others are induced to give credit to the mortgagor, who fails and is unable to pay the debts thus contracted, the mortgage will be declared fraudulent and void at common law, whether the motive of the mortgagee be gain to himself or advantage to his mortgagor."

Mr. Justice Woods quotes in said case from Hilliard vs Cagle, 46 Miss. 309, with approval, the following: "A deed of trust in the nature of a mortgage, valid on its face, and not made or received with any intent to defeat existing or future creditors, may nevertheless be held to be fraudulent and void as to all creditors, existing and future, by evidence aliunde showing the conduct of the parties, showing their dealings in reference to the deed. The principal circumstance relied on in this case to avoid the deed was the fact that the grantor retained possession of the property, and the deed was withheld from record, and the mortgagor was thereby enabled to contract debts upon the presumption that the property was unincumbered. The court declared that the natural and logical effect of the agreement and assignment, and the conduct of the parties thereto, was to mislead and deceive the public, and induce credit to be given to the mortgagor which he could not have obtained if the truth had been known, and therefore the whole scheme was fraudulent as to subsequent creditors, as much so as if it had been contrived from that motive, and for that object."

Mr. Justice Woods also quotes from Gill vs Griffith, 2 Md. Ch. 270, the following: "In the case of Gill vs Griffith, 2 Md. Ch. 270, the court decided that a party cannot be permitted to take a bill of sale or mortgage of chattels from an-

other for his own security, leave the mortgagor in possession and ostensibly the owner, and at his request, and to keep the public from a knowledge of its existence, withhold it from record for an indefinite period, renewing it periodically, and then receive the benefit of it by placing the last renewal upon record, to the prejudice of others whom the possession and ostensible ownership of that very property by the mortgagor have induced to confide in him.   The mortgage which was in controversy in this case was therefore declared void.   Upon appeal, the court of appeals affirmed the decree for the reasons assigned by the chancellor."

And the court also quotes from Hildeburn vs Brown' 17 B. Mon. 779, the following: "In Hildeburn vs Brown, 17 B. Mon. 779, a mortgage was executed by one Sherwood to the plaintiffs, which they withheld from record.   Commenting on that fact, the court said: 'The petition of appellants avows that the arrangement between their agents and Sherwood was to withhold the mortgage from registration, for the purpose of sustaining the latter in business, and not to record the same unless there was danger of Sherwood's failure.   *   *   *   The effect of this arrangement, though it may not have originated in any actual fraudulent or evil purpose, was to secrete from the public eye the true condition of the debtor, and thereby enable him, under the semblance of being the owner of unincumbered real estate, to deceive and mislead other persons by inducing them, upon the faith of his supposed unembarrassed condition, to give him credit which would otherwise have been withheld. Such contrivances or acts, though not designed to perpetrate an actual fraud upon other persons, have an inevitable tendency that way, and are obviously opposed to the general policy of the law requiring the public registration of all liens and incumbrances upon property permitted to be retained and claimed by debtors.   If not directly within that class of acts which the law denominates "constructive frauds," it approx-

(22)

imates so nearly to it that the party avowing himself a participant in such transaction ought not to receive the countenance or aid of the chancellor in enforcing any lien or claim growing out of it as against a third person."

In Marquese vs Felsenthal, 58 Ark. 297, 24 S. W. 494, it is said:   "This question is discussed pro and con in Smith vs Craft (C. C.) reported in ( C. C. ) 12 Fed. 861, and in (C. C. ) 17 Fed. 705; but the case was afterwards taken to the supreme court of the United States, and that court held that such an agreement was not of itself a fraud. but that it was a fact proper to be admitted and considered in evidence on an issue of fraud.    Smith vs Craft, 123 U. S. 436, 8 Sup. Ct. 196, 31 L. Ed. 267.    If there were other circumstances in a given case tending to show a conspiracy between the creditor and the debtor to defraud other creditors, or that the purpose of the favored creditor had been to enable the debtor to make a show of assets, and thereby to obtain credit in such case, a standing secret agreement for a preference should be accorded much weight on an allegation of fraud."

That the concealment of appellants in their letter to Tootle, Wheeler & Motter amounted to a misrepresentation, see the following: "Misrepresentation may consist as well in the concealment of what is true, as in the assertion of what is false.    If a man conceal a fact that is material to the transaction, knowing that the other party acts on the presumption that no such fact exists, it is as much a fraud as if the existence of such fact were expressly denied, or the reverse of it expressly stated.   Concealment, to be of any avail whatever, either at law or in equity, must be dolus dans locum contractui.    There must be the suppression of a fact the knowledge of which it is reasonable to infer would have made the other party to the transaction abstain from it altogether."    Kerr, Fraud & M. § 24.   Would Tootle, Wheeler & Motter have sold Terrell & Co. goods had Foster & Co. told

the whole truth in their letter to them?     They testify they would not.     See, also, Cooley, Torts, p. 559 et seq.; Bigelow Estop. 567 et seq.

In Bank vs Newton, 22 Pac. 447, a Colorado case, the facts are almost the same, and in principle are identical with the case at bar.     The court say:     "The withholding of a mortgage from the record is evidence of fraud, for the reason that from such withholding an intention to keep persons dealing with the mortgagor in ignorance of his true financial standing may be implied.     When the grantor of a trust deed and the beneficiary agree together that the trust deed is not to be recorded as provided by law, that it may not affect the financial standing of the grantor, the evidence of fraudulent intent becomes express.     *     *     *     When added to such fraudulent agreement, the parties thereto actually carry out their fraudulent purpose, not only by concealing the existence of such trust deed, but by representing the credit of the grantor as good,     *     *     *     and where the grantor is thereby enabled to obtain large credit from those who, though diligently endeavoring to ascertain his financial standing, were nevertheless misled by such representations, the evidence of fraud becomes overwhelming and conclusive. *     *     *     So it appears that the trust deed, even if given for a bona fide debt, nevertheless by its use became an instrument of fraud, being concealed for the express purpose of procuring credit for a firm in known failing circumstances. Newton, having knowingly misled the plaintiff bank to its injury by the concealment of the trust deed as well as by direct misrepresentation, equity will not permit him to profit by the instrument through which he has wronged others, either by its direct use, or by other instruments secured in exchange therefor, as contemplated by the fraudulent agreement.     Bump, Fraud. Conv. (3d Ed.) p. 38 et seq.; Blennerhassett vs Sherman, 105 U. S. 100, 26 L. Ed. 1080; Hildreth vs Sands, 2 Johns. Ch. 35; Sands vs Hildreth, 14 Johns. 493;

Hildeburn vs Brown, 17 B. Mon. 779; Boyd's Ex'rs vs Browne, 6 Pa. St. 310; Smith vs Craft (C. C.) 17 Fed. 707."

It is insisted by appellees that appellants are estopped from asserting any rights under the mortgage of January 25, 1895, by reason of their failure to speak the truth in their letter to the attaching creditors, Tootle, Wheeler & Motter, and they cite the following: " 'The term "representation" is used, for convenience, as including both express and implied statements. It is not necessary that there should be an express statement. Whatever word, action, or conduct conveys a clear impression as of a fact is embraced in the term. Indeed, the term "representation" includes silence in certain cases; for silence, where one is bound to speak, is ordinarily equivalent to an admission of fact.' Bigelow, Estop. 'A party who negligently or culpably stands by and allows another to contract on the faith and understanding of a fact which he could contradict could not afterwards dispute that fact in an action against the person whom he himself assisted in deceiving.' Id. 565. Thus, in Niven vs Belknap, 2 Johns. 573, it is observed: 'Though it does not appear positively from this testimony that Belknap took any active agency in this negotiation, yet his presence and silence are equally efficacious and binding upon him if the complainant was thereby misled and deceived. There is an implied as well as an express assent, as where a man has a title, and knows it, stands by, and either encourages or does not forbid the purchase, he and all claiming under him shall be bound by such purchase. It is very justly and forcibly observed by a writer on this subject that there is a negative fraud in imposing a false apprehension on another by silence, where silence is treacherously oppressive. In equity, therefore, where a man has been silent when in conscience he ought to have spoken, he shall be debarred from speaking when conscience requires him to be silent.' The proof shows that the attaching creditors greatly relied upon the state-

ments of the appellants in selling E. Terrell & Co., and that they would not have sold them had they known of the existence of a mortgage on their stock of goods, with an agreement for a new mortgage upon demand. 'The elements of estoppel are a false representation or concealment of material facts, made with a knowledge of the facts, ignorance on the part of the person to whom the representations are made or from whom the facts are concealed, intention that such person should act upon it, and action on his part induced thereby.' Blum vs Merchant, 58 Tex. 400; Steed vs Petty, 65 Tex. 490; Bigelow, Estop. 552; 2 Pom. Eq. Jur. 805."

We think the action of the court below in giving and refusing instructions was proper, and that the judgment was correct, and it is therefore affirmed.

CLAYTON, C. J., and THOMAS and GILL, JJ., concur.