IMPERIAL WOOLEN CO. v. LONGBOTTOM.

(Circuit Court of Appeals, Third Circuit. February 2, 1906.)

No. 7.

Fraudulent Conveyances—Transfer by Debtor for Benefit of Creditors—Estoppel.

> An insolvent manufacturer, at the instance of a committee of his creditors, entered into a contract by which he conveyed to them all of his property, and they conveyed it to a corporation organized by them to carry on his business for the benefit of all of his creditors. It was agreed that all whose claims were less than $100 should be first paid in full; that the debtor should manage the business under the committee's direction, and should receive a salary to be fixed by them; that, if any surplus should remain after the debts were paid, it should go to him; and that he should have the privilege of repurchasing the property at a price which was greater than its value at the time and about 50 per cent of his indebtedness. All of the creditors except one signed the agreement, and such one, while refusing to sign, expressed no objection to the plan, which was carried out. Six months afterward the non-participating creditor commenced an action against the debtor and attached the property. *Held*, that the transfer was not fraudulent either in fact or in law, and could not be impeached by such creditor, especially in view of its silence at the time and delay in asserting its objecttion.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

Ira J. Williams, for appellant.
John Dickey, Jr., for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. The opinion of the court below in this case is reported in 133 Fed. 556, and to that opinion we refer for a

full statement of the facts of the case. The scheme involved in this controversy was devised by the creditors of Robertshaw for their own protection and benefit. Under the provisions of the article of agreement all creditors whose claims were under $100 were to be paid in full, and all the other creditors were to participate in the full benefit of the scheme. No creditor was to be excluded. It was provided in and by the agreement that Robertshaw should sell, transfer, and deliver all his assets to a committee of his creditors, who were to organize a corporation to be entitled "The A. L. Robertshaw Manufacturing Company," which corporation was to carry on, for the benefit of the creditors, the business in which Robertshaw individually had been engaged, and to which corporation the committee of creditors were to convey all the assets of Robertshaw. Accordingly, Robertshaw conveyed and delivered to the committee all his assets, and the committee conveyed the same to such corporation. We here quote a paragraph from the opinion of the court below:

"At the request of the creditors Robertshaw agreed to conduct the business under the supervision of the committee at a reasonable salary to be fixed by them, and it was stipulated that he at any time should be permitted to purchase the entire plant at a price 'not less than forty per cent. of the face value of his whole indebtedness.' This plan of payment was devised by the creditors and the committee, and subsequently agreed to by Robertshaw upon its being represented to him that it was the most feasible way of paying his obligations and protecting his creditors, and it is conceded that it was the intention that all creditors should be included, as the petitioner's name appeared in the agreement as one of the parties of the first part, although it did not sign for the reason stated by the president, James Dobson, when Mr. Joseph H. Truitt called upon him prior to the transfer of the property that 'he would have nothing to do with a joint stock company, as Mr. Robertshaw had already failed previously, and he proposed to take just what there was in it, whatever it would be.' The creditors, and their committee, proceeded with the execution of the agreement and their plan of payment under the impression that there would be no objection on the part of the Imperial Woolen Company, petitioner."

The agreement was signed by all the creditors of Robertshaw (except the Imperial Woolen Company), on September 11, 1901, and shortly thereafter the A. L. Robertshaw Manufacturing Company began business. None of the creditors of Robertshaw have objected to this arrangement save the Imperial Woolen Manufacturing Company, which, on April 12, 1902, caused an attachment execution to be issued on a judgment for $1,723.16 it had obtained against Robertshaw, and to be served on the A. L. Robertshaw Company.

It is plain to us, as it was plain to the judge below, that the transaction in question was absolutely free from the taint of actual fraud. Undoubtedly it was entered into and carried out with the honest purpose of benefiting all the creditors of Robertshaw, and exclusively in their interest. Is it open to the objection that it was a fraud in law as to the petitioning creditor, the Imperial Woolen Company, which now seeks, by virtue of its execution attachment, to be paid in full out of the assets of the bankrupt, the A. L. Robertshaw Manufacturing Company, against which a petition in involuntary bankruptcy was filed on September 12, 1902? To this question we now address ourselves. Here we first quote from the opinion of the court below:

"The whole transaction from its inception shows that the transfer was in the interest of creditors. Robertshaw did not devise it or suggest it, but assented to it as the best method of paying his honest indebtedness. His employment was for the advantage of the creditors whose claims he was honestly endeavoring to liquidate, and he contracted to work for them for three years. * * * Nor is there anything inconsistent with an honest purpose either in the debtor or creditors in the fact that Robertshaw may purchase the property in the future, or that he was to have a return of any surplus remaining after payment of indebtedness without interest. The facts and circumstances in the case show all this was done for the benefit of the creditors, as it is plain that the price at which he was allowed to purchase was in excess of the value at the time of the transfer, and there would be no surplus returned after payment of claims without interest, unless Robertshaw as manager of the business created that surplus by successful conduct of the plant after the transfer, as the property transferred was only about fifty per cent. of the claims."

There was no reservation of a benefit to Robertshaw at the expense of those he owed. The privilege of purchase was remote and contingent and did not amount to a reservation of anything conveyed to the creditors. No secret benefit was secured to him. The whole plan was open and above board. The terms of that plan were fully disclosed to the creditor appellant.

We think the conclusion of the court below is well sustained by the authorities, in view of the peculiar facts of the case and the undoubted honesty of the transaction. In Smith v. Craft, 123 U. S. 436, 8 Sup. Ct. 196, 31 L. Ed. 267, it was held that a bill of sale of a stock of goods in a shop, by way of preference of a bona fide creditor, is not rendered conclusively fraudulent as a matter of law against other creditors, by containing a stipulation that the purchaser shall employ the debtor at a reasonable salary to wind up the business. In Huntley v. Kingman, 152 U. S. 532, 14 Sup. Ct. 688, 38 L. Ed. 540, the court recognized, as a doctrine of the common law, that a debtor in failing circumstances has a right to prefer creditors, though the fund for the payment of other creditors be lessened or absorbed thereby. And speaking of instruments to effect such preferences, the court said:

"The tendency of courts in modern times has been not to hold instruments of this character to be fraudulent and void upon their face, unless they contain provisions plainly inconsistent with an honest purpose, or the instrument indicates with reasonable certainty that it was executed not to secure bona fide creditors but to enable the debtor to continue to carry on his business under cover of another's name."

Not only do we find nothing in the agreement here involved which would vitiate this transaction, as against the creditor appellant, but we altogether disagree with the proposition of the appellant that the transaction itself amounted to a hindering and delaying of it as a creditor. The preference bona fide by a debtor of certain creditors is not illegal, and is not within the inhibition of the statute of Elizabeth. Uhler v. Maulfair, 23 Pa. 481, 483. In Shibler v. Hartley, 201 Pa. 286, 287, 50 Atl. 950, 88 Am. St. Rep. 811, the court said:

"It may be considered, as the established result of our cases, that, if a creditor takes a judgment or conveyance, or payment in any form, to secure an actual debt, the transaction will be valid against other creditors, although he knew (1) that the effect would be to postpone the others, (2) that the debtor intended it to have that effect, and (3) although he took it to aid

that intent as well as to protect himself. The criterion is not the effect, but the fraudulent intent. Without that the transaction cannot be impeached."

Now, in the present case, there was not even a preference as against the appellant. It was protected by the transaction in question equally with all the other creditors of Robertshaw, and the appellant's right to participate pro rata with them is not denied. But, had this transaction been a preference as against the appellant, it even then would not have been impeachable, and the execution attachment would have reached nothing. Much less can the appellant successfully impugn the actual transaction.

But this case has another aspect adverse to the appellant. The testimony, as we have seen, shows that, while the president of the appellant company refused to become a formal party to the agreement by joining in its execution, what he said at that time, we think, justified the other creditors in their assumption of the appellant's acquiescence in the proposed scheme for the benefit of all the creditors. Then, again, the appellant undoubtedly had full knowledge of what was proposed, and if it intended to object, good faith, we think, required it to signify definitely its opposition before the other creditors embarked in the transaction. Instead of doing so, it permitted them to carry out the plan, and forebore to act in opposition to it until after the lapse of six months. In the meantime the corporation provided for in the agreement had been organized, and, acting under the direction of the committee of the creditors, had acquired Robertshaw's assets and had incurred new obligations. Under the circumstances, we think that the appellant is estopped to defeat the consummated transaction by its belated attachment execution.

For the foregoing reasons, the order of the District Court is affirmed.