## 2884. RICKS v. THE STATE.

1. The term "false representations," as used in section 658 of the Penal Code of 1895, defining acts which constitute cheating and swindling, is not necessarily restricted to the use of words written or spoken; but false representations may be made by tokens, signs, or symbols, and may also be implied by way of concealment of part of the truth as to a fact, or from total and misleading silence.
2. There is no material variance between the allegata and probata, and the evidence supports the verdict.

DECIDED NOVEMBER 29, 1910.

Indictment for cheating and swindling; from Muscogee superior court—Judge Gilbert. August 4, 1910.

*T. T. Miller,* for plaintiff in error.

*George C. Palmer, solicitor-general,* contra.

HILL, C. J. The plaintiff in error was indicted for a violation of section 658 of the Penal Code of 1895, which is in the following language: "If any person, by false representation of his own respectability, wealth, or mercantile correspondence and con-

nections, shall obtain a credit, and thereby defraud any person of any money, or other valuable thing," etc., "he shall be deemed a cheat and swindler." His motion for a new trial, based on the general grounds alone, was overruled, and he brings error.

The specific charge in the indictment was that the defendant represented that he was the owner of a two-story building in the town of Soperton, of the value of $3,000, and that there were no mortgages on this real estate, and that he had made no loans from banks: and it was charged that these representations were false and fraudulent, and were made with the intent to induce the prosecutor to extend to him credit for the purchase-price of a lot of shoes, amounting to $757; that in truth and in fact, at the time of making these representations for the purpose aforesaid, the defendant had made, executed, and delivered to the Bank of Soperton his promissory note for $1,340, which was then due and unpaid, and it was secured by a mortgage executed by the defendant on the two-story building above mentioned, which mortgage was then held by the bank and was unpaid and un-cancelled. And it is further charged that the representation that the store was of the value of $3,000 was untrue, and that in fact the store was only worth $1,750. It is charged further in the indictment that by these false and fraudulent representations the Britt-Carson Shoe Company was induced to part with its property, to wit, the shoes, of the value of $757, described in the indictment, and was thereby cheated and defrauded out of said sum of $757. In proof of the allegations of the indictment it was shown that the defendant, for the purpose of obtaining the credit for the shoes, made a written statement as to his wealth and financial condition, which written statement induced the prosecutor to extend the credit and ship to the defendant the shoes. The material part of this written statement is as follows: "For the purpose of obtaining credit with the Britt-Carson Shoe Co., of Columbus, Ga., I do hereby make the following true statement, showing my present financial condition: Assets: Merchandise on hand, at actual cash value, $1,800; good notes and accounts, $800; cash on hand and in bank, $500; real estate, . . two-story building, $3,000. Liabilities: Due for merchandise, open account, $200; due for merchandise, closed with notes, $30; past due for merchandise, $50; loans from banks, x; loans from friends, x; mortgage on

real estate, x; mortgage on stock, x." This statement was signed by the defendant. It is insisted by counsel for the plaintiff in error that the defendant, in this statement, did not make any representation at all on the subject of loans from banks, loans from friends, and mortgages on real estate; that the cross-marks following the questions on these subjects, under the head of liabilities, contained in the written statement, were not written representations, and that therefore there was a material variance between the allegations of the indictment that representations were made by him which were untrue, and the evidence, which showed in fact that no representations at all on these subjects were made; and the question here raised presents the only question for the decision of this court.

It is conceded by the learned counsel for the plaintiff in error that representations may arise by symbols, signs, or tokens, which are calculated to deceive another, but it is contended that when representations arise in that way, the symbols or tokens used must be set forth in the indictment under proper allegations, in order to warrant a conviction for representations made by false tokens or symbols; that in the present case no such allegations are made in the indictment; that the allegations in the indictment contain assertions of facts, to wit, that the defendant made positive representations as to loans from banks and loans from friends, and as to mortgages upon real estate; that the State failed to prove that any representations were made, and that the written statement contained no answer, either "yes" or "no," to the questions propounded therein, but simply cross-marks opposite these questions. So the question is, what is meant by the word "representation," as used in the section of the Penal Code which declares that "if any person, by false representation of his own respectability, wealth, or mercantile correspondence and connections, shall obtain a credit, and thereby defraud any person of any money, or other valuable thing," etc.? Does the word "representation" mean, in this section, that the defendant, before he can be convicted, shall by words make the statement of his own respectability, wealth, or mercantile correspondence and connections, or has the word "representation" a much broader signification? In its strict sense, as defined by lexicographers, a representation is an assertion or statement of some fact; but we think that the word "representation,"

as illustrating cases of cheating and swindling, has a broader mean-
ing. It not only includes the actual assertion of the fact, but there
may be by conduct a constructive or implied representation that
a fact does exist, without any express assertion of the existence of
the fact. In other words, we think the term "representation" in-
cludes both express and implied statements, and that whatever
word, action, or conduct conveys a clear impression that the fact
does exist is embraced in this term. It has been frequently held
that the term "representation" includes silence, in certain cases;
for silence, where one is bound to speak, is ordinarily equivalent
to an admission of fact. A representation that is false is synony-
mous with a false pretense, and it has been held that false pre-
tenses may consist in any act, word, symbol, or token calculated to
deceive another, and knowingly and designedly employed by any
person with intent to defraud another of money or other personal
property. 3 Words & Phrases Judicially Defined, 2668. Again,
"it is not requisite that the false pretense should be made in ex-
press words, if the idea is conveyed." Queen *v.* Cooper, 3 Am.
Crim. Rep. 461. As said by the Court of Appeals of New York,
in the case of People *v.* Oyer and Term. of the County of New
York, 83 N. Y. 453, "it is not necessary that words should be
spoken or written, to create a false representation. A mute or
silent act may effectively convey the falsehood; and if it does, the
consequence and the crime are the same."

The written statement made by the defendant recites: "For the
purpose of obtaining credit with the Britt-Carson Shoe Co., of
Columbus, Ga., I do hereby make the following true statement,
showing my present financial condition." And the defendant sent
this statement to the prosecutor, purporting to be a true state-
ment of his assets and liabilities. He answered specifically the
questions propounded to him in the statement as to his assets and
as to his liabilities, but opposite the questions as to loans from
banks and mortgages on real estate he placed cross-marks. It was
his duty to answer all the questions propounded plainly and un-
equivocally, and not to answer in such manner as to deceive and
make a false impression as to the facts. Can it be doubted that
he intended the Britt-Carson Shoe Company to construe these
statements as meaning a representation by him that he had no loan
from the bank and had no mortgage on his real estate? Can any

other reasonable construction be placed upon these statements? Such was the construction placed upon it by the Britt-Carson Shoe Company, and it was the construction which the defendant intended should be placed upon it. Can it be said that the statement contained no representation whatever as to loans from banks and mortgages on real estate? What did the cross-marks mean in the statement? If there was any doubt as to what the cross-marks meant in the statement, that doubt was solved by the jury under the evidence, and from an inspection of the statement itself, and can this court say that the jury were not fully authorized in the conclusion that the cross-marks, used as they were, were intended to convey to the mind of the company that the defendant did not owe any loan to a bank and had not made any mortgage on his real estate? In other words, it was for the jury to determine whether the representation made by these cross-marks, taken in connection with the whole statement, was calculated to impose on the Britt-Carson Shoe Company and induce it to part with its property; and was in fact the means employed by the defendant to obtain the goods and to get credit extended to him. We can not doubt that the failure of the defendant to answer unequivocally "yes" or "no" to the two questions propounded to him as to loans and mortgages, and the use by him of the cross-marks, were equivalent, in substance and in effect, to a representation that there were no loans and no mortgages: and the evidence indisputably shows that at the time when these representations were made, the defendant did owe the bank a loan which was secured by a mortgage on the very real estate which he had described in his written statement. We conclude, therefore, that there was no material variance between the allegations and the proof, and that the conviction in this case was amply sustained by the evidence. All the essential elements of the offense of cheating and swindling, as described in the section under which the indictment was framed, were fully proved. Judge Russell, in speaking for this court in the case of *Crawford* v. *State,* 4 *Ga. App.* 796 (62 S. E. 505), uses the following language pertinent to the question made in this case: "A citizen has the right to rely, so far as the criminal law is concerned, upon representations made to him by one with whom he deals which are apparently reasonable and truthful; and he who falsely, fraudulently, and intentionally abuses

this confidence, so absolutely necessary to the conduct of commercial transactions, must be made to know that he does so at his peril."

*Judgment affirmed.*