246 F.2d 505
 INLAND EMPIRE INSURANCE COMPANY, a corporation; and
Continental Bank and Trust Company, Receiver of Assets of
Inland Empire Insurance Company; and R. F. Apodaca,
Conservator of Assets of Inland Empire Insurance Company in
the State of New Mexico, Appellants,
v.
K. H. BAIR and K. H. Bair, Jr., d/b/a K. H. Bair & Company, Appellees.
 No. 5529.
 United States Court of Appeals Tenth Circuit.
 July 12, 1957.
 
 J. C. Ryan, Albuquerque, N. Mex., and David Watkiss, Salt Lake City, Utah (W. A. Keleher and A. H. McLeod, Albuquerque, New Mex., Fred M. Standley, Atty. Gen. for the State of New Mexico, Frank Zinn, Santa Fe, New Mex., and Pugsley, Hayes & Rampton, Salt Lake City, Utah, on the brief), for appellants.
 F. L. Nohl, Albuquerque, N. Mex., for appellees.
 Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.
 LEWIS, Circuit Judge.
 
 
 1
 This case is one of a series brought about by the insolvency and the appointment of a receiver by the United States District Court in Utah to administer the affairs of Inland Empire Insurance Company, an Idaho corporation with its principal place of business in Salt Lake City, Utah, but having assets and liabilities in twenty-one states. See Inland Empire Insurance Co. v. Freed, 10 Cir., 239 F.2d 289; Continental Bank & Trust Co. v. Apodaca, 10 Cir., 239 F.2d 295.
 
 
 2
 On October 24, 1954, plaintiffs-appellees, hereinafter called Bair, were appointed agents for Inland for the State of New Mexico to sell and service Inland's insurance policies. Each of such policies contained a provision that in the event of cancellation by the company the premium would be prorated and the unearned portion refunded to the policyholder; that in the event the policy was canceled by the holder the unearned premium would be determined for refund under a short rate cancellation schedule. By custom and practice, sums so paid an insured by an agent were set off against any amounts due Inland by the agent, and, in effect, constituted a refund to the agent for the payments made to policyholders.
 
 
 3
 On September 8, 1955, because of Inland's financial difficulties, an Idaho state court issued an injunction restraining actions against the insurance company and further restrained the company from disposing of any of its property except as authorized by the Idaho State Commissioner of Insurance. On September 12th, R. F. Apodaca, Superintendent of Insurance for the State of New Mexico, called upon Bair and discussed Inland's status and the problems involved for New Mexico agents in protecting their clients. On the following day Bair received this letter:
 
 
 4
 'September 12, 1955
 
 
 5
 'Mr. K. H. Bair
 
 
 6
 1325 East Central Ave.
 
 Albuquerue, New Mexico
 
 7
 'Re: Inland Empire Insurance Company, Boise, Idaho
 
 
 8
 'Dear Mr. Bair:
 
 
 9
 'This office has received a telegram from the Honorable Leo O'Connell, Commissioner of Insurance of the State of Idaho, stating as follows:
 
 
 10
 "A Restraining order has been issued on officers of Inland Empire by Third District Court in Idaho and a hearing on an order for rehabilitation has been set for September 30, 1955. Your cooperation is urgently requested and your agents representing Inland Empire should be advised to immediately remit all balances due to the Company. Inland Empire is solvent but has no funds to pay claims due to the withholding of balances by agents. It is only through the cooperation of all commissioners that the problems confronting Inland can be successfully worked out and the policyholders and creditors can be protected.'
 
 
 11
 'As soon as you prepare your Agency Accounts Current Report with the Inland Empire, kindly forward a copy to this office in order to maintain our information up to date with respect to the matters affecting the Inland Empire Insurance Company.
 
 
 12
 'No doubt you realize that it is important to handle all transactions affecting the business of the Inland Empire with due regard to the public interest involved.
 
 
 13
 'Very truly yours, (s) R. F. Apodaca, Superintendent of Insurance'
 
 
 14
 On that day, September 13th, Bair caused the surrender to him of all policies sold or serviced by him for Inland and issued to each policyholder identical coverage in other companies; also on that date Mr. Apodaca took possession of Bair's license to sell Inland Empire insurance.
 
 
 15
 Bair initiated this action against Inland in the United States District Court for the District of New Mexico on November 8, 1955, claiming a total due him of $34,490.97 as the prorated value of unearned premiums upon the canceled Inland policies and earned commissions upon the same policies. Continental Bank and Trust Company, receiver,[1] and Apodaca who had been appointed Conservator of Assets of the Inland Empire Insurance Company in New Mexico, were permitted to intervene. The receiver entered a counterclaim for money allegedly due the insurance company by reason of premiums collected but unremitted by Bair in the amount of $11,662.76. The trial court, holding that the cancellations occasioned under these circumstances were attributable to Inland by the terms of the policies, awarded Bair $24,650.06 for unearned premiums on policies canceled on a pro rata basis and $6,907.26 as earned commissions on policies canceled. Inland was awarded judgment on its counterclaim for unremitted collections of $2,833.65, such award not being subject to setoff.
 
 
 16
 The appellants, representing the insurance company in its insolvency, preliminarily contend that after the appointment of a federal receiver, plaintiff's action abated and his only proper recourse was to file a claim against the receiver. We see no merit to this contention for the appointment of a receiver does not oust a court of jurisdiction which it had previously acquired. Where the court has jurisdiction over the parties and the subject matter, it may proceed to determine the nature and amount of the claim for such an adjudication will in no way disturb the position of the liquidation court and does not involve a determination of what priority the claim should have. Morris v. Jones, 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488. See also Riehle v. Margolies, 279 U.S. 218, 49 S.Ct. 310, 73 L.Ed. 669; Wilder v. City of New Orleans, 5 Cir., 87 F. 843. The receiver had notice of the action, it was permitted to intervene, and no prejudice is shown to it in the choice of a forum. Nor are appellants correct in their assertion that the allowance of this action results in an unlawful preference in favor of shareholders who received new insurance. The instant claim is distinguishable from that made by the agent in the cases of Bohlinger v. Ward, 20 M.J. 331, 120 A.2d 1, and 34 N.J.Super. 583, 113 A.2d 38, 43, where an attempt was made by the agent to set off the amount which he claimed for unearned premiums against the amount which he owed the insurance company. Clearly that action, if allowed, would diminish the insolvent's estate, leaving a smaller amount to be distributed among other creditors. But in the present case Inland was given judgment for the amount of premiums unremitted by Bair and Bair was not permitted to set off that amount against his judgment. The Inland judgment becomes an asset of the corporation in insolvency and Bair will share on whatever distributive basis the receiver is ultimately allowed for payment of judgment debts.
 
 
 17
 The principal ground urged for reversal is that Bair, having acted without initial assignment or contract with his Inland clients to reinsure them and being without authority from Inland to effectuate a mass cancellation of its policies,[2] was acting as a volunteer or interloper and hence acquired no recoverable claim against Inland. But appellant concedes that the procedure followed by Bair resulting in the surrender of the Inland policies by the various insureds accomplished an actual cancellation of the policies and indebted the company to each of the policyholders for a return premium. It seems clear that 'the pursuit of these claims by (Bair) as assignee of the holders of the particular canceled policies occupying in reality the position of general creditors would be in harmony with the principles of fairness and equity.' Bohlinger v. Ward, supra. The real difficulty lies in determining whether the cancellations should be treated as originating from Inland or from the policy holders.
 
 
 18
 The general rule that the insolvency of an insurance company creates a cancellation of outstanding policies by operation of law and the insureds are thereafter permitted to share in the assets in receivership on a pro rata basis, Hobbs v. Occidental Life Insurance Co., 10 Cir., 87 F.2d 380, seems inapplicable to the instant facts. Here the policies were canceled and new policies written on another company on September 13, 1955; the adjudication of Inland's insolvency was made on November 29, 1955. Prior to the cancellation there were apparently a number of rumors of the company's difficult financial situation, but also it was an apparent possibility that the company might be rehabilitated through conservative policies The State of Idaho undertook to do so. A telegram from Mr. O'Connell, Commissioner of Insurance of the State of Idaho, expressly stated that Inland was solvent and that its difficulties were due to the withholding of balances by the agents. Therefore, it cannot be said that the policies were canceled by the insolvency of the insurer. Nor can the trial court's finding that the cancellation was either directed by Mr. Apodaca as Superintendent of Insurance in New Mexico, or at least made with his tacit approval, govern. Such a fact cannot vary the terms of a contract between insured and insurer.
 
 
 19
 A contract of insurance, dealing as it does with the potential of unblessed events, presupposes mutual confidence not only between insurer and insured but also between agent and company and agent and client. The legal consequences of the acts of an insurance agent who, in attempting to preserve the confidence reposed in him by company or client, must by necessity render a disservice to one or the other, are ofttimes severe. And there can be little doubt that Bair rendered no service to Inland by occasioning a general cancellation of its policies at a time when the company's financial future was in the balance. But the cancellation and acceptance by the policyholders of reinsurance constituted a recognition and ratification of Bair's acts on behalf of the insured and effectively transferred the subject risk from Inland to the substituted insurer. The agent, although an agent of the company in the making of the original contract, becomes an agent for the insured if the cancellation is made with the insured's consent or subsequent ratification. See 83 A.L.R. 298 et seq. It follows that the return premium should be computed from the short rate cancellation schedule as a cancellation by the insured and that the judgment entered by the trial court is an error in that regard. Similarly that portion of the judgment awarding Bair the sum of $6,907.26 as earned commissions must be re-examined in view of our holding that the cancellations were made by the insured. The record before us does not show what contractual rights, if any, Bair has to commissions upon policies written by him and subsequently canceled by the insured. Other contentions made by appellant are deemed to be without merit.
 
 
 20
 Reversed and remanded with directions to proceed in accordance with the views herein expressed.
 
 
 
 [1]
 The receiver was appointed November 29, 1955, by the United States District Court for the District of Utah
 
 
 [2]
 The general authority of an agent to accept or effect individual cancellations cannot be expanded into authorization to make mass cancellations. Bohlinger v. Ward, supra