504 P.2d 17

**WESTERN CASUALTY AND SURETY COMPANY, Plaintiff-Appellant,**

v.

**CITY OF SANTA FE et al., Defendants-Appellees.**

**No. 9377.**

Supreme Court of New Mexico.

Dec. 15, 1972.

Montgomery, Federici, Andrews, Hannahs & Morris, Sumner G. Buell, Santa Fe, for plaintiff-appellant.

George A. Graham, Jr., Truth or Consequences, for Arthur Giron.

Harry S. Connelly, Jr., Special Asst. City Atty., for City of Santa Fe, Santa Fe.

Anthony J. Albert, Santa Fe, for Ernie Rael.

## OPINION

OMAN, Justice.

This is a suit brought by plaintiff, Western Casualty & Surety Company, hereinafter called Western, against the defendants, City of Santa Fe, Arthur Giron and Ernie Rael, hereinafter referred to as the City, Giron and Rael, respectively. The complaint contained four separate causes of action. The trial court held against Western on all four causes, and it has appealed. We affirm in part and reverse in part.

Western was the City's insurer under a combined general liability and motor vehicle policy. Giron was employed by the City as a detective on its police force. At about 11:00 p.m. on April 11, 1968, Giron, acting in the course of his employment, while endeavoring to arrest Rael, shot him. Rael was then twenty years of age. The wound inflicted upon Rael was apparently relatively minor. Giron promptly reported the shooting to the City, but the City gave no notice thereof to Western until September 25, 1968, upon claim being made by Rael through his attorney against the City.

Rael filed suit against the City and Giron on April 11, 1969, seeking damages on the theory that the shooting was the result of recklessness and carelessness on the part of Giron. The court file in that cause fails to show the date when a copy of this complaint was served on the City or Giron, but at the end of the complaint it is stated: "Plaintiff [Rael] will amend."

On April 25, 1969, Rael filed an amended complaint in which he added a second cause of action. Recovery was sought against the City in the first cause of action on the basis of an alleged negligent shooting, and against Giron in the second cause of action on the ground of an alleged wilful or intentional shooting. The court file also fails to reflect when a copy of this amended complaint was served on the City or Giron.

On May 5, 1969, an answer was filed to the original complaint by Giron and the City, and this was done on their behalf by attorneys employed by Western.

On May 12, 1969, these attorneys, acting on behalf of Giron and the City, requested of the court an extension of time until June 2, 1969, within which to file answer to the amended complaint. An order granting this request was entered on May 13, 1969.

On May 27, 1969, the attorneys wrote Giron, calling to his attention the amended complaint and the nature of the claims made in each cause of action thereof and advising that Western, as the insurer for the City:

" * * * has taken the position that there is no coverage for you individually when the claim is one for an intentional tort. Further, there certainly is no coverage of their claim for punitive damages. Therefore, besides there being no coverage under the policy, there is no duty to defend this litigation in your behalf. Thus, you will have to obtain your own attorney to protect your interest."

On May 28, 1969, the attorneys filed answer to the amended complaint on behalf of the City. Giron promptly employed an attorney who entered his appearance on behalf of Giron on May 29, 1969. This attorney answered the amended complaint for Giron on May 29, 1969, and has represented him in both that suit and in the present suit at all times since then.

On December 2, 1969, a pre-trial conference was held in the suit filed by Rael against Giron and the City. At that conference Rael filed a motion for leave to file a second amended complaint. At that time the case had not been set for trial. However, it appears the trial court denied the motion. Subsequently, by order filed on January 20, 1970, leave was granted Rael to file a second amended complaint, which was filed on January 26, 1970. By the first cause of action, recovery was sought from the City on the basis of negligence and recklessness. By the second cause of action, compensatory damages were sought from Giron on the grounds of negligence and recklessness. By the third cause of action, punitive damages were sought from Giron on the grounds of recklessness and "negligence reflecting * * * indifference for the rights of others."

The City's answer to this second amended complaint was filed on January 29, 1970, and Giron's Answer thereto was filed on February 11, 1970.

On April 10, 1970, upon a motion by the City, the order of January 20, 1970 was stricken, but Rael was again given permission to file a second amended complaint. It appears the second amended complaint filed on January 26, 1970 and the answers thereto are the pleadings in which the issues in that suit are defined and presently before the trial court.

The City sought a dismissal of the first amended complaint on the grounds of untimely notice by the City and "that the actions by the defendant Giron were not of such a nature to be within the coverage provided by the policy," or, in the alternative, a summary judgment on the ground that the City is immune from suit by reason of its sovereign immunity, since it had no insurance coverage.

The trial court ultimately denied the motion insofar as it sought dismissal or summary judgment in favor of the City on the ground of sovereign immunity; denied the motion as to Giron on the ground "that there is a genuine issue of material fact"; and refused to rule upon the question of timely reporting of the shooting accident

on the ground that the motion by the City on this premise was improper. Thereupon Western filed the present suit for declaratory judgment which is before us on this appeal.

In its first point relied upon for reversal, Western claims error on the part of the trial court in holding (1) Western is estopped to deny Giron coverage under the policy of insurance issued to the City; (2) Western waived all policy defenses against Giron; and (3) Western is obligated to defend Giron in the tort action brought by Rael. It is apparent that Western must prevail on this point unless it is estopped to deny Giron coverage under the policy issued to the City.

The decision of the trial court is consistent with Western's claim that Giron is not a named insured in the policy, and the trial court's decision in this respect is correct. Giron's requested finding, that Western insured the City "and its employees on April 11, 1968," was denied by the trial court; Rael's requested conclusion that the policy covered "Giron for any liability arising out of the claim presented by Rael" was also denied; the trial court announced orally "that the policy does not extend coverage to the individual employee"; and the only basis upon which the trial court sought to extend coverage under the policy to Giron was that of estoppel. No cross-appeal has been taken by Giron or the other defendants. Thus, the question is whether coverage under the policy can properly be extended to Giron on the theory of estoppel. Unquestionably the majority view, and what we consider to be the better view, is that the doctrine of estoppel cannot be invoked to create a contract of insurance. 16A Appleman, Insurance Law and Practice, § 9090 (Rev.Vol.1968) and cases therein cited. See also 1 A.L.R.3d 1147, § 3 (1965) and cases therein cited. Here, as already stated, there was no contract of insurance between Western and Giron.

The trial court also erred for another reason in holding Western estopped from denying the existence of a contract

of insurance with Giron. He did not rely and act upon any conduct by Western to his prejudice. The facts are above outlined; and it is apparent that Giron was not prejudiced by the fact that the attorneys employed by Western made answer on his behalf to a complaint which had already been superseded by an amended complaint; by the fact that they secured on his behalf an extension of time within which to file answer to the amended complaint; by the fact that in the letter of May 27, 1969, the attorneys made reference only to an intentional tort; or by any other act or conduct by Western or its representatives. As above stated, Giron employed an attorney on or before May 29, 1969, and has at all times since been represented by that attorney. Compare the facts in this case and the result we here reach on the issue of estoppel with the facts and the results reached on this issue in Looney v. Allstate Insurance Company, 392 F.2d 401 (8th Cir. 1968) and in State Farm Mutual Automobile Ins. Co. v. Gonzales, 83 N.M. 296, 491 P.2d 513 (1971).

Since Giron was not an insured under the policy and the trial court erred in holding Western was estopped to deny him coverage thereunder, there can be no question of waiver by Western of any of its rights under the policy insofar as Giron is concerned and no question about Western not owing Giron a defense under the policy.

Western next contends: "The trial court erred in finding coverage and a duty to defend the City * * * and * * * Giron because neither * * * gave plaintiff notice 'as soon as practicable' as required by the insurance policy."

Insofar as Giron is concerned, we have already held he was not covered by the policy. Therefore, the claim of failure on his part to give timely notice of the shooting is not an issue.

Insofar as the City is concerned, it was insured by Western on April 11, 1968, the date of the shooting. Notice was given of the shooting by the City to Western on

September 25, 1968. The trial court found this notice was given "as soon as practicable." The City has sought to answer Western's claims of late notice by relying upon estoppel and waiver. The fallacies in these positions lie in the facts that the City requested no findings or conclusions upon these or any other theories; the trial court made no findings or conclusions on either of these theories insofar as the City is concerned; the issue of estoppel is ordinarily one of fact to be decided by the trier of the facts and not an issue of law to be resolved on appeal [United States v. James Stewart Company, 336 F.2d 777 (9th Cir. 1964); N. Litterio & Co. v. Glassman Const. Co., 319 F.2d 736 (D.C.Cir. 1963)], that is, it is a question of fact to be resolved by the trier of the facts and this resolution will not be reversed on appeal, unless a contrary finding is the only reasonable finding supportable by the facts of the case [Landberg v. Landberg, 24 Cal. App.3d 742, 758, 101 Cal.Rptr. 335, 346 (1972). See also General Finance Corp. v. Jackson, 296 P.2d 141 (Okl.1956)]; and the issue of waiver is also ordinarily one of fact to be resolved by the trier of the facts [Yates v. American Republics Corp., 163 F.2d 178 (10th Cir. 1947); Chavez v. Gomez, 77 N.M. 341, 423 P.2d 31 (1967); Reinhart v. Rauscher Pierce Securities Corp., 83 N.M. 194, 490 P.2d 240 (Ct.App. 1971); Perry v. Staver, 81 N.M. 766, 473 P.2d 380 (Ct.App.1970)].

The trial court's findings, upon which the City has made no attack and is in no position to attack, do not constitute a finding of either estoppel or waiver and do not support as a matter of law a conclusion by us that Western either waived its right to notice as soon as practicable or is estopped from asserting this right.

■ Thus, the issue to be decided under this point is whether the finding by the trial court that notice was given as soon as practicable finds support in the evidence. The trial court found Giron was acting within the scope of his employment by the City when Rael was shot, and that Giron did not intentionally shoot Rael. These findings are not attacked.

The shooting, in addition to being accidental, resulted in what at the time appeared to be an injury of an inconsequential nature. The bullet struck Rael on the right knee as he was running from Giron. Rael continued running until he arrived at a point where he had left his automobile. He drove from there to the home of a brother-in-law. He informed the brother-in-law of the shooting and the brother-in-law took him to the emergency room of a hospital. An attendant at the hospital called the police department and reported that a boy claiming to have been shot by a police officer had just been admitted.

A police officer went immediately to the hospital where he found Rael and his father in the emergency room. In his report of investigation to the police department, the officer described the nature of the wound and the medical treatment given therefor as follows: "Ernie Rael was treated by Dr. S. M. Gonzales, for a superficial gun-shot wound on the right knee, was x-rayed then released from the hospital."

The Chief of Police considered the wound superficial, and in describing or defining a superficial wound, stated it consisted of grazing of the skin without any penetration. He also described the injury as "trivial" and "not serious," according to the hospital reports. He stated the reports received from the hospital showed "it was a minor pain."

In referring to a conversation between him and Rael's father, he testified:

"Q. And did you get a complaint on this incident?

"A. Yes, sir.

"Q. Who made the complaint?

"A. Mr. Rael, the boy's father.

"Q. And did he talk to you?

"A. Yes, sir.

"Q. And was he mad and upset, indignant?

"A. No, sir, very nice about it, just wanted to know what had taken place and how come the boy had been shot."

The City Manager, when asked if he knew the "boy had been shot," answered he "knew that there was an injury to the youngster," and he had received information that "it was a slight injury." He decided not to report the incident to Western at the time it was reported to him because the injury was slight, and because there were daily incidents of minor scuffles and injuries inflicted in the operation of the police department. " * * * [I]t was not practical to report every activity that happened with the Police Department or with the jail." Immediately upon claim being made by Rael, it was reported to Western. "This was really the only practical way to handle this number of claims' * * *."

Giron saw Rael in the emergency room at the hospital and later that night at the police station, but he saw no wound. Just before midnight on April 11, or just after midnight on April 12, 1968, Rael walked into the police station and "turned himself in to [Giron]."

We are of the opinion the facts support the trial court's finding that notice was given as soon as practicable. The rule announced in Watson v. Western Casualty & Surety Company, 72 N.M. 250, 382 P.2d 723 (1963), in which, insofar as here pertinent, the construction and application of an identical notice provision was involved, is applicable here. In that case we quoted with approval from 8 Appleman, Insurance Law and Practice, § 4743 at 78 the following rule:

"'It has been held that the insured need not report every trivial accident, but if an ordinarily prudent individual acting reasonably would consider, under all the circumstances, that the accident was inconsequential and that no claim for damages would be made, notice need not be given to the insurer.

"'The question of reasonableness must be determined on the basis of facts as they existed at the time of the controverted events, and compliance or non-compliance cannot be established by subsequent events. Notice is ordinarily required only in case of an accident producing an apparent bodily injury. * * *'"

Although there was an apparent injury to Rael, it was superficial and of such apparent insignificance and triviality that a reasonable person would be justified in believing that no claim would be made by Rael. This view of the evidence is particularly valid and persuasive to us, since we adhere to the rule that on appeal the evidence will be viewed in the light most favorable to support the judgment and all evidence to the contrary disregarded. Watson v. Western Casualty & Surety Company, supra. In addition to the Watson case and the authorities cited therein on this question of notice, see also Mountainair Mun. Sch. v. United States Fid. & Guar. Co., 80 N.M. 761, 763, 461 P.2d 410 (1969); Gibson v. Colonial Ins. Co., 92 Cal.App.2d 33, 206 P.2d 387 (1949).

In its third point relied upon for reversal, Western claims error on the part of the trial court in awarding Giron attorney's fees for his defense of the tort action and in defending against Western's claims in this declaratory judgment action.

Giron has not responded to and in no way contests Western's claim that if he is not an insured under the policy he is not entitled to attorney's fees in either the tort action or in this declaratory judgment suit. We have already held Giron is not an insured under the policy. Consequently, there is not and never has been a duty on the part of Western to defend him in the tort action. It necessarily follows that he is not entitled to attorney's fees for his efforts in failing to be held an insured under the policy.

We reverse the judgment of the trial court insofar as it adjudged Giron to be an

**414**

insured under the policy; insofar as it adjudged Western should defend Giron in the tort action; and insofar as it awarded Giron attorney's fees. We affirm the judgment insofar as it adjudged Western should defend the City in the tort action.

It is so ordered.

McMANUS and STEPHENSON, JJ., concur.